No. 51,624

MARY DOLORES BACA AND SUSAN ROBERTSON GERARD, as individuals and MARY DOLORES BACA AND SUSAN ROBERTSON GERARD as Trustees of the LOUISE V. STOVER TRUST, *Appellants,* v. WALGREEN Co., an Illinois corporation, *Appellee.*

(638 P.2d 898)

Opinion filed January 15, 1982.

*John E. Wilkinson,* of Topeka, argued the cause and was on the brief for the appellants.

*Robert S. Johnson,* of Russell, Johnson & Johnson, of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This case is before the court on a Petition for Review of the decision of the Court of Appeals found at 6 Kan. App. 2d 505, 630 P.2d 1185 (1981).

A detailed factual account of the events pertinent to this lawsuit appears in 6 Kan. App. 2d at 509-14. We present them in a highly summarized form.

Walgreen's drug store and restaurant at 815 Kansas Avenue in Topeka operates under a lease dating from April 1, 1960. The present landlords, plaintiffs in this action, first became aware of a potential problem with the restaurant operation at 815 Kansas

Avenue in April 1978 when their attorney-in-fact George Gerard received a loss control engineering report prepared by the plaintiffs' insurers who recommended that the dry chemical automatic fire extinguishing system be extended to cover the cooking surfaces as well as the then currently protected hood and duct and that an automatic fuel/power shutoff device be installed to operate in conjunction with the extinguishing system. Gerard sent a letter to Walgreen on May 11, 1978, requesting compliance.

On June 12, 1978, plaintiffs' insurance company notified the Foltz-Roepke Agency in Topeka that insurance coverage would be cancelled if the cooking surfaces protection problem could not be solved. Gerard received a copy of that letter in early July and, contemporaneously, made telephone inquiries of Steven Gudenkauf, the store manager at 815 Kansas, and Vincent Leone of the Walgreen Maintenance Division in Illinois regarding the progress on installation of the equipment. No work had been done.

On July 17, 1978, Gerard received a letter from Vincent Leone stating he had reviewed the lease and found no grounds for the tenant Walgreen to undertake installation of the fire extinguishing system. On the same day, Gerard sent a notice of default to Walgreen demanding the tenant shut down the cooking surfaces until installation of the fire extinguishing system and declaring default by violation of an implied covenant to operate the business in a safe manner.

Walgreen indicated it would provide the protection desired and on July 25, 1978, contacted Keller Fire & Safety Equipment Company of Kansas City for an estimate. An order was placed on September 26, 1978, but the system proved to be one Keller was not authorized to work on. Another company, E-Kan, Inc., sent an estimator out at defendant's request on October 4, 1978.

Meanwhile, in an unrelated incident, a meltdown of electrical wires occurred at the rear of the store when an electrical junction box malfunctioned. On October 1, 1978, Gerard arrived at the 815 Kansas Avenue store while the junction box was still smoldering. Kansas Power & Light was in the process of repairing a steam leak in its delivery line supplying heat to the premises, and Gerard saw a steam leak from the service line to the building. The steam leaks were found to have contributed to the meltdown.

On October 10, 1978, Gerard talked with the estimator for E-Kan, Inc., called the Topeka Fire Department regarding fire

prevention systems required by law for restaurants, and sent Walgreen a letter entitled "Supplemental declaration of forfeiture of right of possession under former sublease and notice of additional defaults." In addition to the previous grounds for default, the letter stated that the tenant Walgreen was in default for failure to repair the steam service line.

On October 12, 1978, at Gerard's request, the State Fire Marshal's Department inspected the property and found violations of K.S.A. 1980 Supp. (then 1978 Supp.) 31-133 and K.A.R. 22-13-4. The inspector's report stated: "All facilities maintaining commercial cooking equipment shall have an approved automatic extinguishing system mounted in ventilation canopies directly above such equipment."

On October 19, 1978, landlords filed suit against Walgreen for breach of the lease, with service of process effected October 20.

On November 17, 1978, Michael Hirschtick, legal counsel for Walgreen, addressed three letters to plaintiffs: One, notifying plaintiffs of their failure to install a dry fire extinguishing system in the grill area at the store; two, notifying plaintiffs of their failure to repair and relocate the electrical junction box as required by the local fire code; and three, notifying plaintiffs of their failure to repair and replace the heating system including all steam lines. The defendant invoked the 30-day period under the lease after which the defendant could perform the work at the plaintiffs' expense.

On November 20, 1978, Gerard denied by letter that the landlords had any obligation to make the repairs requested. The defendant, on or about November 30, 1978, ordered electrical repairs totalling $3,943. During the first two weeks of December 1978, the dry fire extinguishing system and automatic fuel/power shutoff were installed on order of the defendant.

The trial court determined, under the provisions of the lease, that it was the duty of the defendant to install the dry fire extinguishing system and automatic fuel/power shutoff device at its own expense but that the defendant did not have to comply until *actual notice of findings and requirements of the State Fire Marshal.* The court further found Walgreen had not materially breached the lease by failing to install the fire prevention devices because: (1) The valid requirements of public authorities referred to in Article 4 of the lease were not established until October 13,

1978; (2) the defendant was under no obligation to install the devices on request of plaintiffs' insurer; (3) plaintiffs did not give written notice of breach after October 13, 1978; and (4) a good faith dispute existed as to responsibility for installation of the fire prevention devices.

On the defendant's counterclaim, the court found the steam service line a part of the building's heating system and repairs costing over $200 the obligation of the landlord under the lease. There was, however, no award of damages for repair of the steam line. The court found the electrical junction box to be damaged by fire and repairs the obligation of the landlord under the lease. The defendant was granted judgment in the sum of $3,943. The court further found the defendant had failed to sustain the burden of proving constructive eviction on its counterclaim for damages.

The plaintiffs/landlords appealed to the Court of Appeals from those portions of the trial court's decision finding that the failure to install the fire extinguishing system was not a material breach and from the award of $3,943 for repair of damage to the electrical junction box. The defendant/tenant cross-appealed from those portions of the judgment: (1) Finding the doctrines of res judicata and judicial estoppel inapplicable; (2) failing to enjoin the landlords from further harassment; (3) failing to award $1,200 to the tenant for replacement of underground steam supply pipe and requiring the tenant to install the fire extinguishing system at its own expense; (4) failing to award $4,990 for repairs to the exterior of the building; (5) failing to award punitive damages for wanton and malicious harassment and a denial of peaceful and uninterrupted possession; and (6) refusing the tenant attorney's fees and costs.

On appeal, the Court of Appeals found the trial court erred in finding there had not been a material breach of the lease. The Court of Appeals reversed the trial court on that issue, concluding "[t]he trial court should have ordered the lease forfeited, as there was a material breach of the lease after proper notice of forfeiture." 6 Kan. App. 2d at 523. The Court of Appeals further found the trial court should have awarded the tenant $1,200 damages for replacement of the underground steam supply pipe. With regard to the other issues raised on appeal, the Court of Appeals affirmed the trial court. Both landlords and tenant petitioned this court for review of the Court of Appeals decision. We granted review.

On review, the landlords (plaintiffs/appellants) challenge the awards to the tenant of $3,943 damages for repair and relocation of the electrical junction box and $1,200 damages for repair of the steam service line. The tenant (defendant/appellee/cross-appellant) seeks review of the Court of Appeals determination that there had been a material breach of the lease which resulted in forfeiture. Other issues addressed by the Court of Appeals were not raised on the Petition for Review and we consider them settled.

We turn first to the question of breach and forfeiture of the lease. Article 19 of the lease provides for notice of breach and forfeiture if no diligent effort is made to cure the default within 30 days:

"19. If any rent is due and remains unpaid for ten days after receipt of notice from Landlord, or if Tenant breaches any of the other covenants of this lease and if such other breach continues for thirty days after receipt of notice from Landlord, Landlord shall then, but not until then, have the right to sue for rent, or to terminate this lease or Tenant's right to possession, and re-enter said premises, but if Tenant shall pay said rent within said ten days, or in good faith within said thirty days commence to correct such other breach, and diligently proceed therewith, then Tenant shall not be considered in default."

The breach most vigorously argued by the landlords is tenant's failure to install the fire extinguishing system which, if required, is clearly the tenant's financial obligation because required by the manner in which the tenant uses the premises. 6 Kan. App. 2d at 517. The landlords allege violation of certain provisions in Articles 4 and 9 of the lease. The provisions in those Articles provide:

"4. . . . Tenant shall comply with the valid requirements of public authorities regarding the manner of the conduct of Tenant's business in the leased premises . . . .

. . . .
"9. Tenant may install and operate interior and exterior electric and other signs, soda fountain machinery and any other mechanical equipment, and in so doing shall comply with all lawful requirements."

In Kansas the State Fire Marshal has statutory authority to adopt reasonable rules and regulations to safeguard life and property from the hazards of fire and explosion. K.S.A. 1980 Supp. 31-133 (then 1978 Supp.). Specifically, in subsection (4), he has authority to require "installation and maintenance of equipment intended for fire control, detection and extinguishment in

all buildings and other places in which persons work, live or congregate from time to time for any purpose . . . ." K.A.R. 22-13-4, adopted pursuant to this statute and *effective January 1, 1973,* provides, in pertinent part: "[A]ll facilities maintaining commercial cooking equipment shall have approved automatic extinguishers mounted in the ventilation canopies or directly above such equipment."

K.A.R. 22-13-32 addresses the question of retroactivity and provides:

"The regulations contained in the foregoing sections *shall allow facilities in service prior to the effective date of such regulations, and not in strict conformity therewith, to continue in service so long as such facilities are not determined by the authority having jurisdiction to constitute a distinct hazard to life or property."* (Emphasis added.)

The Walgreen store at 815 Kansas Avenue, in operation since the early 1960's, clearly comes within this provision.

Accordingly, the circumstances surrounding the October 12, 1978, inspection are important. On October 11, 1978, George Gerard directed a letter to the State Fire Marshal explaining the safety recommendations of his own insurer and asking for a report of statutory and regulatory requirements "to safeguard the employees and customers of the Walgreen Co. and to protect the building." In response to this letter, an inspection, made the following day, noted violation of K.A.R. 22-13-4. *No notice seems to have been taken, however, that Walgreen's operation preceded the effective date of the regulation.* To make the requirement effective as against Walgreen a determination needed to be made that the facility constituted "a distinct hazard to life or property." *No such determination was made* although testimony was elicited in the trial of this matter that the facility constituted a hazard to property.

Contrary to the finding of the Court of Appeals, we find Walgreen was not in violation of any requirement of a public authority at the time it refused to install the fire extinguishing equipment and, consequently, had not breached Articles 4 or 9 of its lease agreement. In light of this determination, consideration of the sufficiency of notice of breach or of due diligence in correcting the breach becomes unnecessary.

Plaintiffs/landlords further contend in their Petition for Review that the defendant/tenant's failure to repair the steam service line

after notice constituted a sufficient basis, independent of the controversy over installation of the fire extinguishing system, for tenant's forfeiture of its right to possession of the premises. We are in agreement with the trial court and the Court of Appeals that repair of the steam service line was the responsibility of the landlord. Plaintiffs argue that the use of steam heat was a discretionary act related directly to the manner in which tenant used the premises or, in the alternative, that the steam pipe is not heating "equipment" for which the landlord is responsible under Article 6 of the lease.

Provisions of the lease relevant to this issue state:

"5. Tenant shall make repairs to the interior of the leased premises and plate glass replacements, except as provided below. Landlord shall maintain and make all repairs to the exterior and structural portions of the building, sidewalks, parking and other common areas, entrances to the leased premises, *pipes,* ducts, wires and conduits leading to and from the leased premises.  . . .

"6. Landlord shall make repairs and replacements to *heating* and air conditioning *equipment* costing in excess of $200.00 in each instance." (Emphasis added.)

Even if we were to accept plaintiffs' construction of the word "equipment" as referring only to those movable portions of the heating "system," Article 6 read in conjunction with Article 5 clearly contemplates a heating system, the repair of which is the landlord's responsibility.

While heat is required for the operation of the business in that it is necessary to the comfort of patrons and employees of the business, it is not a requirement peculiar to the manner in which this tenant is using the premises, such that its repair becomes the tenant's responsibility. Repair of the steam service line was the landlord's responsibility.

We turn now to the damages issues raised by the landlords. In upholding the trial court's judgment of $3,943 for repair and relocation of the electrical junction box, the Court of Appeals stated in 6 Kan. App. 2d at 523:

"The lease specifically obligates the landlords to make repairs caused by fire and to comply with the orders of public authorities with regard to the leased premises (not related to the conduct of tenant's business). The Violation Notice of the Building Inspection Department of the city of Topeka indicates the repair of the electrical junction box was repair of *fire* damage. Furthermore, the inspector found that repairs were necessary to comply with the National Electrical Code. This was clearly the responsibility of the landlords under the above-mentioned provisions." (Emphasis in original.)

The Court of Appeals further concluded the trial court should have awarded the tenant $1,200 damages for repair of the steam service line "on the same basis as the award of the damages for repair of the electrical junction box." 6 Kan. App. 2d at 526.

We have no difficulty in concluding the Court of Appeals erred in awarding the $1,200 sum for repair of the steam pipe. Our examination of the trial court record reveals that Exhibit 56, which included the bill for this repair, was excluded from evidence because no proper foundation was laid. Furthermore, no testimony was introduced regarding the charge for repair of the steam line. Although as determined above, the landlords had the obligation to make repairs and replacements to the steam service line, there was a complete failure of proof as to the sum expended by the tenant, if any.

We next consider the propriety of the $3,943 award to tenant for repair and relocation of the electrical junction box.

Relevant portions of the lease provide:

"2. . . . Landlord shall furnish to the leased premises at all times sufficient sewer, gas, water and electric service lines of sufficient capacity as required by Tenant, which shall be connected to an adequate source of supply or disposal.

. . . . .

"4. . . . Tenant shall comply with the valid requirements of public authorities regarding the manner of the conduct of Tenant's business in the leased premises, *but as to the leased premises, Landlord shall make all changes or installations so required.*

"5. . . . Landlord shall maintain and make all repairs to the exterior and structural portions of the building, sidewalks, parking and other common areas, entrances to the leased premises, pipes, ducts, *wires* and conduits leading to and from the leased premises. Landlord shall make all repairs required by the fault of Landlord or by *fire,* casualty or the elements, or by dry rot or termites." (Emphasis added.)

The landlords contend the trial court erroneously concluded the electrical malfunction was a fire within the meaning of Article 5 of the lease. This is a question of fact determined by the trial court and the record supports that determination. There was testimony from an electrical inspector regarding a fire as well as introduction into evidence of a Fire Report. In addition, George Gerard testified that, when he arrived on the scene October 1, 1978, "smoky fumes" were coming out of the junction box. He further testified he learned there had been a fire or electrical short circuit which caused some smoke. While the extent of the damage was apparently limited to the wires themselves, there is nonethe-

less evidence of a fire. We note in passing that Article 5 obligates the landlord to repair wires as well as fire damage.

We are further persuaded this repair was the landlords' responsibility by the fact, as noted in the Court of Appeals opinion, that the repairs were necessary to comply with the National Electrical Code.

We find no error in the decision of the Court of Appeals upholding the trial court's award of $3,943 to the defendant for repair and relocation of the electrical junction box.

After having examined all arguments advanced and authorities cited by the parties on review, we affirm the Court of Appeals in upholding the damage award of $3,943 for repair and relocation of the electrical junction box, but reverse the Court of Appeals in awarding $1,200 damages for repair to the steam service line and in ordering the lease forfeited. The judgment of the trial court is affirmed as to all issues raised in the Petition for Review.